**UNITED STATES DISTRICT COURT**
**DISTRICT OF CONNECTICUT**

| | | |
|---|---|---|
| SUZANNE MATTESON, | : | |
| Plaintiff, | : | CIVIL CASE NO. |
| | : | 3:19-CV-01960 (JCH) |
| v. | : | |
| | : | |
| SAFECO INSURANCE COMPANY | : | |
| OF ILLINOIS, | : | MARCH 23, 2022 |
| Defendant. | : | |

**RULING ON DEFENDANT'S MOTION FOR SUMMARY JUDGMENT (DOC. NO. 58)**

**I.   INTRODUCTION**

Plaintiff Suzanne Matteson brings this action against her insurer, defendant Safeco Insurance Company of Illinois ("Safeco"), alleging four counts stemming from its denial of her underinsured motorist claim.  See generally Second Am. Compl. ("Compl.") (Doc. No. 31).  Safeco, in turn, has filed a counterclaim seeking a declaratory judgment that, inter alia, it "has no further liability or obligation" to Matteson for the accident.  See Def.'s Answer to Pl.'s Second Am. Compl. at 9 ("Def.'s Answer") (Doc. No. 43).

Following discovery, Safeco has moved for summary judgment on its counterclaim and all four counts of Matteson's Complaint.  See Def.'s Mot. for Summ. J. on the Counterclaim and Pl.'s Am. Compl. (Doc. No. 58); Def.'s Mem. in Supp. of Its Mot. for Summ. J. on the Counterclaim and Pl.'s Am. Compl. ("Def.'s Mem.") (Doc. No. 58-1); Def.'s Reply Mem. in Further Supp. of its Mot. for Summ. J. ("Def.'s Reply") (Doc. No. 65).  Matteson opposes this Motion.  See Mem. of Law in Supp. of Pl.'s Objection to Def.'s Mot. for Summ. J. ("Pl.'s Mem.") (Doc. No. 64-1).

For the reasons discussed below, the court grants in part and denies in part Safeco's Motion for Summary Judgment.

## II.   BACKGROUND

### A.   Rule 56(a)2 Statement

As an initial matter, the court begins by noting that plaintiff has manifestly failed to comply with the Local Rules in opposing Safeco's Motion for Summary Judgment. When a party moves for summary judgment, Local Rule 56 requires them to support their Motion with a "document entitled 'Local Rule 56(a) Statement of Undisputed Material Facts,' which sets forth, in separately numbered paragraphs . . . a concise statement of each material facts."  D. Conn. L. Civ. R. 56(a)1.  "Each statement of material fact" in the movant's Rule 56(a)1 Statement "must be followed by a specific citation" to admissible evidence in the record.  D. Conn. L. Civ. R. 56(a)3.  In moving for summary judgment here, Safeco has complied with this requirement.  See Def.'s Rule 56(a)1 Statement of Undisputed Material Facts ("Def.'s R. 56(a)1 Stmt") (Doc. No. 58-2).

Local Rule 56 also requires that the party opposing summary judgment "file and serve with the opposition papers a document entitled 'Local Rule 56(a)2 Statement of Facts in Opposition to Summary Judgment.'"  D. Conn. L. Civ. R. 56(a)2(i).  That document "shall include a reproduction of each numbered paragraph in the moving party's Local Rule 56(a)1 Statement followed by a response to each paragraph admitting or denying the fact and/or objecting to the fact."  Id.  A Rule 56(a)2 Statement "must also include a separate section entitled 'Additional Material Facts' setting forth in separately numbered paragraphs . . . any additional facts."  D. Conn. L. Civ. R. 56(a)2(ii).  As with the Rule 56(a)1 Statement, the non-movant must cite to admissible evidence in the record to support each paragraph.  D. Conn. L. Civ. R. 56(a)3.

2

Plaintiff has done none of this here.  She has not submitted a Rule 56(a)2 Statement at all, although the section in her Memorandum entitled "Undisputed Facts" arguably contains similar information to what the "Additional Material Facts" section would include in a properly submitted Rule 56(a)2 Statement.  See Pl.'s Mem. at 7-9. Where a party has failed to comply with Rule 56, the court "may . . . deem[ ] admitted certain facts that are supported by the evidence in accordance with Local Rule 56(a)1." D. Conn. L. Civ. R. 56(a)3.  In other words, a district court has "discretion in deeming all facts in [a] defendant['s] Local Rule [56(a)1] statement admitted" when they are properly supported by evidence in the record and the non-moving plaintiff fails to controvert those facts.  See, e.g., Suares v. Cityscape Tours, Inc., 603 F. App'x 16, 18 (2d Cir. 2015) (holding a district court in New York acted within its discretion in admitting defendants' facts supported by the record where plaintiff failed to comply with a nearly identical local rule).

Because Matteson has failed to comply with Rule 56, the court deems admitted the material facts in defendant's Rule 56(a)1 Statement to the extent they are adequately supported by specific citations to admissible evidence in the record.  See, e.g., Vaden v. Connecticut, 557 F. Supp. 2d 279, 285 (D. Conn. 2008) (deeming facts in defendant's Rule 56(a)1 Statement admitted where plaintiff failed to comply with Rule 56).  The court will, however, in its discretion, still look to the statements of material fact plaintiff makes in her Memorandum and the citations to the record therein.[1]  The method

---

[1] The court also notes that a careful review of the record demonstrates that the parties largely do not dispute the relevant evidence in the record; instead, the crux of their dispute is the interpretation of what the exhibits say as they pertain to the parties' agreement to dismiss the Rhode Island action.  They therefore emphasize different aspects of the record that support their interpretation.

in which Matteson lays out her fact section in separately numbered paragraphs with

citations to the record at the very least demonstrates an attempt to present the evidence

to the court in an organized manner.  Pl.'s Mem. at 7-9.  In addition, the court is

obligated to view the evidence in the light most favorable to Matteson, the non-movant,

at this stage.  Doing so, in this court's view, requires treating the "Undisputed Facts"

section in her Memorandum similar to an "Additional Material Facts" section of a

properly submitted Rule 56(a)2 Statement.

     B.    <u>Facts</u>

     In 2013, defendant Safeco issued plaintiff Matteson a personal automobile

insurance policy.  <u>See</u> Def.'s R. 56(a)1 Stmt at ¶ 1; Def.'s Ex. B (Doc. No. 58-4).  The

policy had effective dates of June 4, 2013 through December 4, 2013.  <u>Id.</u>  In relevant

part, the policy provides:

> LEGAL ACTION AGAINST US
>
> . . .
>
> C.    All claims or suits under Part C of this policy must be brought within three years of the date of the accident.  However, in the case of a claim involving an underinsured motor vehicle, the insured may toll any applicable limitation period by:
>
> 1.    Notifying us prior to expiration of the three year period, in writing, of any claim the insured may have for Underinsured Motorists Coverage; and
>
> 2.    Commencing suit or arbitration proceedings not more than 180 days from the date of exhaustion of the limits of liability under all automobile bodily injury bonds or policies applicable at the time of the accident by settlements or final judgments after any appeals.

Def.'s Ex. B at 20.

     On August 18, 2013, while she was covered by the policy, Matteson was

involved in a motor vehicle accident.  Def.'s R. 56(a)1 Stmt at ¶ 3.  At the time of the

accident, "Matteson was slowing down with traffic" when she "was rear ended."  Def.'s Reply Ex. A (Doc. No. 65-1).  Matteson had several medical issues as a result of the accident and, as of May 2021 was "still see[ing] [a doctor] . . . who prescribe[d] [her] the meloxicam that [she] ha[d] been on since the accident."  See Def.'s Ex. A, Dep. of Suzanne Matteson, at 17.  She continued to be prescribed that medication due to lingering back pain stemming from the accident.  Id.

Shortly after the accident, on September 16, 2013, Matteson reached out to Safeco through counsel via a faxed letter.  See Def.'s R. 56(a)1 Stmt at ¶ 4; Def.'s Ex. C (Doc. No. 58-5).  In that letter, Safeco was advised that Matteson was represented by counsel "for bodily injuries sustained" in the accident.  Def.'s Ex. C.  In addition, the letter stated that Matteson had "$5,000.00 medical payments coverage" under her policy; that she "ha[d] made co-payments"; and that she "would like to be reimbursed by the medical payments coverage" for those expenses.  Id.  The letter did not specifically mention an underinsured motorist claim.[2]  Id.  According to Matteson's attorney, however, following the letter she "had numerous telephone conversations with the Defendant's adjuster within" the three years after the accident regarding "the fact that there would be an underinsured claim as the tortfeasor policy was not sufficient" to fully cover Matteson's damages from the accident.  Pl.'s Ex. A, Aff. of Isabel V. Del Vecchio, at ¶ 4 (Doc. No. 64-2).

---

[2] Mattson states in the "Undisputed Facts" section of her Memorandum that, because "[a] claim number with Defendant is noted" in the letter, that is "evidence[ ] that an underinsured motorist claim was opened."  Pl.'s Mem. at 7.  She does not, however, cite to any evidence in the record demonstrating that the claim number in the letter was opened for an underinsured motorist claim.

5

In August 2014, approximately a year after the accident, Matteson brought suit against the tortfeasor who had rear ended her in Rhode Island Superior Court.  Def.'s R. 56(a)1 Stmt at ¶ 5; Pl.'s Mem. at 7.  While that case remained pending, Matteson's attorney sent an email to Safeco on July 28, 2017.  Def.'s Ex. E (Doc. No. 58-7).  In that email, her attorney stated that "this email [is] notice of potential underinsured motorist claims" for Matteson.  Id.  The email also noted that a date for arbitration had been set with the tortfeasor, who only "carried 25/50 BI limits."  Id.  This was the first written correspondence specifically mentioning an underinsured motorist claim.  Def.'s Ex. F, Dep. of Christina Morante, at 78 (Doc. No. 58-8).

Eventually, the Rhode Island case against the tortfeasor settled on May 14, 2018.  Def.'s R. 56(a)1 Stmt at ¶ 9; Pl.'s Mem. at 8.  The settlement was for $25,000, the full policy limit under his insurance.  Def.'s R. 56(a)1 Stmt at ¶ 9; Pl.'s Mem. at 8; Aff. of Isabel V. Del Vecchio at ¶ 5.  Following settlement, Matteson's attorney averred that she "requested consent to settle from the underinsured motorist adjuster [at Safeco] via email and numerous phone calls from both [her]self and [her] paralegal."  Aff. of Isabel V. Del Vecchio at ¶ 6.  She "also indicated that an underinsured claim would follow" and "was shuffled between at least three underinsured motorist adjusters."  Id.  An email in the record provides further support for at least some Attorney Del Vecchio's statements. On June 19, 2018, a representative from Safeco reached out to Del Vecchio asking for an update on the settlement.  See Def.'s Ex. G (Doc. No. 58-9).  Attorney Del Vecchio responded by saying she was still "waiting for consent to settle from the UIM adjuster" and asked for that person's contact information.  Id.  The Safeco representative replied that same day, saying that the uninsured motorist adjuster had left his role and been

replaced by someone else.  Id.  Safeco eventually consented to the settlement on July

10, 2018.  See Def.'s R. 56(a)1 Stmt at ¶ 11; Def.'s Ex. H (Doc. No. 58-10).  Matteson

was then "paid out on the tortfeasor claim for [her] medical payments via check dated

July 13, 2018."  Aff. of Isabel V. Del Vecchio at ¶ 7.

On January 15, 2019, Attorney Del Vecchio sent a letter to Safeco that

constituted Matteson's "formal demand for underinsured motorist compensation."  See

Def.'s Ex. K (Doc. No. 58-13).  According to her, the letter was only sent after "several

unanswered phone calls regarding the claim."  Aff. of Isabel V. Del Vecchio at ¶ 8.  She

also averred that "[t]he demand, follow up emails and phone calls were never answered

and/or returned."  Id. at ¶ 9.  In the face of this silence, Attorney Del Vecchio reached

out to Safeco on April 9, 2019, to "ask that this matter mo[v]e toward arbitration."  Def.'s

Ex. L (Doc. No. 58-14).  She also indicated she was "open to a pre arbitration

mediation."  Id.  Safeco does not appear to have responded to this email but, on April

24, 2019, it sent Attorney Del Vecchio a letter informing her that it was denying

Matteson's underinsured motorist claim because she had "failed to put [them] on notice

of your client's UIM claim within three years of the date of loss and [she] failed to

request UIM arbitration within 180 days of the exhaustion of the tort carrier's bodily

injury limits as required" by the policy.  Def.'s Ex. M (Doc. No. 58-15).

Following the denial of her claim, Matteson filed suit against Safeco in Rhode

Island on May 22, 2019.  Def.'s R. 56(a)1 Stmt at ¶ 19; Pl.'s Mem. at 8.  After Safeco

moved to dismiss that action for lack of personal jurisdiction on August 9, 2019, Safeco

counsel reached out to Attorney Del Vecchio to discuss refiling the case in Connecticut.

Def.'s R. 56(a)1 Stmt at ¶¶ 20-21; Pl.'s Mem. at 8-9.  According to Attorney Del Vecchio,

Safeco counsel told her during those telephone conversations that they did "not want to win on a technicality.  We just want this filed in the proper jurisdiction."  Aff. of Isabel V. Del Vecchio at ¶ 13.  Attorney Del Vecchio also stated in her Affidavit that, during her telephone conversations with Safeco counsel, Safeco counsel "made it clear that on behalf of the Defense, she was dropping any claims or defenses the defense might have regarding timely notice or timely filing."  Id. at ¶ 15.

In an email dated October 16, 2019, Attorney Del Vecchio reached out to Safeco counsel to confirm that, "per [their earlier] conversation, [Safeco] has agreed to not assert their statute of limitations defense, if the Plaintiff withdraws the Rhode Island filing and files the case [anew] in Connecticut."  Def.'s Ex. O (Doc. No. 58-17).  Yet subsequent emails demonstrated confusion between the two parties as to the scope of their agreement.  On October 21, 2019, Safeco counsel left Attorney Del Vecchio a message concerning the agreement.  Def.'s Ex. R (Doc. No. 58-20).  She followed it up with an email to Attorney Del Vecchio the next day, where she attached "a letter that outline[d] [the] agreement concerning the dismissal of the Rhode Island action."  Id.  In pertinent part, the letter agreement stated that:

> Pursuant to the agreement of the parties, [Matteson has] agreed to voluntarily dismiss the [Rhode Island] lawsuit . . . without costs, with prejudice and with all rights of appeal[ ] waived.  In exchange, Safeco agreed to waive the statute of limitations defense for 60 days from the date of this correspondence, or up to December 21, 2019, for [Matteson] to file a lawsuit in the State of Connecticut against Safeco arising out of the subject accident.

> Please be advised that this agreement is specifically limited to Safeco's waiver of the statute of limitations defense for sixty (60) days only.  Safeco explicitly reserves the right to assert any and all available defenses pursuant to [Matteson's] failure to comply with the Policy conditions and obligations, including but not limited to, [her] failure to provide Safeco with proper notice of a[n] Underinsured Motorist Claim and failure to request UIM Arbitration within 180 days of exhaustion of the tortfeasor's policy limits.

8

Def.'s Ex. P at 1-2 (Doc. No. 58-18).

The following day, Attorney Del Vecchio responded to Safeco counsel's email. She wrote that the "letter was a bit confusing for me.  I think it was very clear during our phone conversation but I just want to make sure we are clear.  If we withdraw our action in RI and file by December 21, 2019 in CT Safeco is waiving <u>any</u> claims or defenses it may have that this was not filed within the applicable time period."  Def.'s Ex. Q (Doc. No 58-19) (emphasis added).  Safeco counsel then responded to that email by saying "[y]es, if the Plaintiff agrees to dismiss the Rhode Island action . . . then Safeco will agree to waive the statute of limitations defense only, specifically reserving all other rights available to Safeco at law under the policy."  <u>Id.</u> (emphasis added).  Two days later, Attorney Del Vecchio replied again.  Her email, in its entirety, read: "Waive any claims or defenses regarding timely filing."  <u>Id.</u>  Safeco counsel then responded with the exact same email she had sent two days earlier in response to Attorney Del Vecchio's first email, which again began by saying "[y]es, if the Plaintiff agrees to dismiss the Rhode Island action . . . then Safeco will agree to waive the statute of limitations defense only, specifically reserving all other rights available to Safeco at law under the policy."  <u>Id.</u> (emphasis added).  Seven minutes later, Attorney Del Vecchio responded to an earlier email on the chain and said: "Ok [Safeco counsel] you have permission to electronically sign [the stipulation of dismissal in the Rhode Island action] for me.  Thank you.  I will sign the agreement and return for your signature."  <u>See</u> Def.'s Ex. R.  There is nothing in the record, however, showing that Attorney Del Vecchio actually did sign the agreement.  <u>See</u> Def.'s Ex. P at 3 (showing the signature of Safeco counsel but not of Attorney Del Vecchio).

C.    <u>Procedural History</u>

Matteson proceeded to file the instant action in Connecticut Superior Court on November 12, 2019.  <u>See</u> Notice of Removal at ¶ 1.  Her Complaint included a single count requesting "full and fair compensation pursuant to the underinsured motorist policy" she held with Safeco.  <u>See</u> Notice of Removal, Ex. A, Compl. at ¶ 14 (Doc. No. 1-1).  A month later, Safeco noticed the removal of her action to this court.  <u>See</u> Notice of Removal.  It then moved to dismiss the action, while Matteson moved to amend her Complaint to add a claim of bad faith against Safeco.  <u>See</u> Def.'s Mot. to Dismiss (Doc. No. 15); Pl.'s Mot. for Leave to Am. Compl. (Doc. No. 22).  On April 2, 2020, the court granted Safeco's Motion to Dismiss and denied Matteson's Motion to Amend, without prejudice to her refiling an Amended Complaint within 30 days.  <u>See</u> Ruling on Def.'s Mot. to Dismiss and Pl.'s Mot. to Amend (Doc. No. 28).

Matteson proceeded to do just that, filing the operative Complaint on May 5, 2020.  <u>See</u> Compl.  That Complaint contained four separate counts.  In Count One, Matteson alleged breach of contract against Safeco; in Count Two, promissory estoppel; in Count Three, bad faith; and in Count Four, a violation of the Connecticut Unfair Trade Practices Act (CUTPA).  <u>Id.</u>  After Safeco again moved for dismissal, the court denied its Motion on January 19, 2021.  <u>See</u> Ruling on Def.'s Mot. to Dismiss (Doc. No. 42).  Safeco then filed its Answer and counterclaim, before eventually moving for summary judgment on July 15, 2021.  <u>See</u> Def.'s Answer to Pl.'s Second Am. Compl.; Def.'s Mot. for Summ. J. on the Counterclaim and Pl.'s Am. Compl.

III.    **STANDARD OF REVIEW**

A Motion for Summary Judgment will be granted if the record shows "no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of

10

law." Fed. R. Civ. P. 56(a).  The moving party bears the initial burden of establishing

the absence of a genuine dispute of material fact.  <u>Celotex Corp. v. Cartrett</u>, 477 U.S.

317, 323 (1986).  The non-moving party may defeat the motion by producing sufficient

specific facts to establish that there is a genuine issue of material fact for trial.

<u>Anderson v. Liberty Lobby, Inc.</u>, 477 U.S. 242, 248-49 (1986).  A genuine issue of

material fact exists where the evidence is such that a reasonable jury could decide in

the non-moving party's favor.  <u>See, e.g.</u>, <u>Biondo v. Kaledia Health</u>, 935 F.3d 68, 73 (2d

Cir. 2019) (citing <u>Anderson</u>, 477 U.S. at 248).

## IV.   ANALYSIS

In its counterclaim, Safeco asks this court for a declaratory judgment finding that

it "has no further liability or obligation" to Matteson because she breached her policy by

failing to toll the three-year limitation period for bringing a claim against it.  <u>See</u> Def.'s

Answer to Pl.'s Second Am. Compl. at 9.  Below, the court begins by analyzing the

merits of this counterclaim.  It then addresses each of the counts Matteson brings in her

Complaint.

### A.    <u>Safeco's Counterclaim</u>

Matteson's insurance policy with Safeco requires her to bring "all claims or suits"

related to underinsured motorist coverage "within three years of the date of the

accident.  Def.'s Ex. B at 20.  She can, however, toll this period by meeting two

requirements.  First, she must "[n]otify [Safeco] prior to expiration of the three year

period, <u>in writing</u>, of any claim [she] may have for Underinsured Motorists Coverage."

<u>Id.</u> (emphasis added).  Second, she must "[c]ommenc[e] suit or arbitration proceedings

not more than 180 days from the date of exhaustion of the limits of liability under all

automobile bodily injury bonds or policies applicable at the time of the accident by

settlements or final judgments after any appeals." Id.  Here, Safeco argues that

Matteson failed to meet either of these requirements – let alone both – and that, as a

result of her breach, it is not obligated to provide her benefits under the policy.  Def.'s

Mem. at 7-10.  Matteson counters by arguing that the "numerous telephone

conversations and emails" Attorney Del Vecchio had with Safeco during the three-year

period "provided [them with] notice of her intent to pursue an underinsured motorist

claim."  Pl.'s Mem. at 13-14.

Connecticut courts have addressed near-identical notice requirements in

underinsured motorist policies at length.  In Voris v. Middlesex Mut. Assur. Co., 297

Conn. 589 (2010), the Connecticut Supreme Court analyzed a policy that, similar to the

case here, "included a provision that required any actions against the [insurer] to be

brought within three years of the date of the accident, but which also permitted a claim

for underinsured motorist benefits to be brought at a later date as long as written notice

of intent to bring such a claim was filed within that three year period."  Voris, 297 Conn.

at 592-93 (emphasis in original).  In that case, the accident occurred in May 2004, and

the insured brought suit against the tortfeasor in May 2006.  Id. at 593.  However, it was

not until June 2007, outside of the three-year period, that "plaintiffs provided written

notice to the defendants that they intended to seek benefits under their underinsured

motorist coverage."  Id.

After the insurance company denied plaintiffs coverage because they had failed

to provide written notice within the three-year period, the insured plaintiffs brought suit

against the insurance company defendant seeking underinsured motorist benefits.  Id.

The Superior Court granted summary judgment for the insurer, finding that "the

plaintiffs' admittedly late written notice to the defendants of their intent to claim underinsured motorist benefits constituted an absolute bar to recovery of such benefits." Id. at 594.  This was despite an affidavit in the record from one of the plaintiffs where he claimed that, shortly after the accident in May 2004, he had called the insurance company and "was 'led to believe that this notice constituted the correct notification procedure under [his] policy and preserved all of [his] rights under [his] policy including a claim for underinsured benefits.'"  Id. (quoting the Affidavit of John Voris).

The Supreme Court upheld the trial court's judgment.  On appeal, plaintiffs argued first that "the court should not have strictly construed the time limitation and instead should have applied the principle . . . that strict compliance with contract notice terms may be excused in order to avoid a forfeiture, as long as there is no prejudice to the insurer."  Id. at 494-95.  The Supreme Court rejected this argument.  It first recognized that, even though the insurance policy was an adhesion contract, the general rules of contract interpretation still governed because the terms were not ambiguous.  Id. at 495-96.  The court then reviewed its precedent concerning notice requirements in underinsured motorist policies, noting that it had previously "characterized [its] case law as setting forth the proposition that an insurer is 'entitled to enforce an unambiguous policy provision requiring an insured to file an action for underinsured motorist benefits within [a certain time period] from the date of the accident.'"  Id. at 597 (quoting Serrano v. Aetna Ins. Co., 233 Conn. 437, 443 n. 7 (1995)).  Because of this, the court "expressly reject[ed] th[e] proposition" that prejudice to the insurer was a material consideration in the context of late notice for underinsured

motorist claims.[3]  Id. at 599.  It concluded, bluntly, that "[s]ince the plaintiffs in the present case neither filed an underinsured motorist action within the contractually specified time period nor tolled that period in accordance with the contract, in the absence of some applicable contract or other legal defense to bar enforcement of the contract as written . . . the trial court properly determined that their underinsured motorist action [was] barred."  Id. at 600.

Next, the court considered whether plaintiffs had brought forth "some applicable contract or other legal defense to bar enforcement" of the requirement that the notice be written.  Id.  In particular, the court considered whether Voris' Affidavit documenting his call to the insurance company shortly after the accident, and his contention that he and the other plaintiffs "had been misled as to the notice requirements of the policy", created a genuine issue of material fact precluding summary judgment.  Id.  The court concluded that it did not.  In his Affidavit, Voris had said only that, "'[a]s a result of [his] conversation with [the insurance representative], [he] was led to believe that [the telephone call] constituted [the] correct notification procedure under [his] policy.'"  Id. at 601 (quoting the Affidavit of John Voris).  The court reasoned, however, that Voris had "failed to present any evidence as to what the defendants in fact did to mislead them."  Id. at 602 (emphasis added).  In other words, "plaintiffs ha[d] not presented any evidence as to what [the representative] actually said to" Voris.  Id. (emphasis added).  Because Voris had averred only his "state of mind" following that conversation, "there [was] no basis to determine whether [the insurance representative's] response to [ ]

---

[3] The court also noted that, because the legislature had prescribed "both a minimum time limitation that the insurer may impose for filing the claim and a tolling provision" through statute, its reasoning that insurers were then entitled to enforce such terms had "particular force."  Id. at 600.

Voris' report of the accident could have led a reasonable person to form the belief that his oral notification of the accident served as notification for the purposes of his underinsured motorist coverage." Id. at 602-03. Absent such evidence, Voris' Affidavit was insufficient to create a genuine issue of disputed material fact. While plaintiffs "may have presented sufficient evidence . . . as to whether they misunderstood the terms of their policy . . . they ha[d] not alleged even a single action on the part of the defendants that led to that misunderstanding." Id. As such, "a mere assertion of the state of mind of the [plaintiffs]" was insufficient to preclude summary judgment. Id. at 603.

Other relevant case law in Connecticut is similarly unfavorable to policyholders. In Dorchinsky v. Windsor Ins. Co., 90 Conn. App. 557 (2005), the Appellate Court of Connecticut considered an underinsured motorist claim against the backdrop of policy terms virtually identical to the terms at issue here. Dorchinsky, 90 Conn. App. at 560 (quoting the relevant policy language). In that case, the insured "submitted an affidavit in which she averred that, immediately after the accident, she telephoned her insurance agent to notify it of the accident, and that shortly after the accident she forwarded a copy of a repair estimate and the police report to her insurance agent along with a note indicating that 'she intended to make an insurance claim for all the damages sustained to [her] car and to [her] as caused by the accident." Id. However, "[n]owhere in her affidavit did the plaintiff state that she sent written notice of a claim for underinsured motorist benefits" within the three-year period. Id. at 560-61. On these facts, the Appellate Court affirmed the trial court's decision to grant summary judgment for the insurer. Id. at 561. First, it agreed with the trial court that, because "the notice requirement in the policy contemplates specific reference to a potential claim for

underinsured motorist benefits", the insured's "notice [that] reference[d] nothing more than the accident and a claim for property damage, medical bills and damages in general [was] not sufficient." Id. (internal quotations and citations omitted).  Second, it strictly interpreted the requirement that the notice be written.  Because "[t]he policy plainly require[d] written notice of a claim for underinsured motorist benefits", and the plaintiff had failed to provide such written notice within the relevant timeframe, summary judgment for the insurer was warranted.  Id. (emphasis added).

Other cases decided in Connecticut subsequent to Voris and Dorchinsky have reaffirmed the strict rule that, in the face of policy terms like the ones Matteson has here, notice must generally be in writing, specifically mention an underinsured motorist claim, and be within the three-year timeframe in order to successfully toll the contractual requirement that any claim or suit be brought against the insurer within three years of the accident.  See, e.g., Riith v. Golden, No. FSTCV095009856S, 2011 WL 7029753, at *4 (Conn. Super. Ct. Dec. 19, 2011) (granting summary judgment for the insurer after finding the written notice requirement for an uninsured motorist claim had not been met despite written correspondence between the insured and insurance company during the three-year period "regarding the fact that she was involved in an accident and that she intended to make a claim concerning her injuries and medical bills"); Ellis v. County Agency, Inc., No. CV146017155S, 2017 WL 1238457, at *2 (Conn. Super. Ct. Jan. 23, 2017), aff'd on reh'g, Ellis v. County Agency, Inc., No. CV146017155S, 2017 WL 3011674 (Conn. Super. Ct. May 25, 2017) (interpreting Dorchinsky, in the context of a different notice requirement, to observe that, in Connecticut when a policy requires written notice, the insured is required to provide notice to the insurer in that manner);

Orsini v. Kemper Independence Ins. Co., No. NNHCV126031073, 2014 WL 341737, at *5 (Conn. Super. Ct. Jan. 7, 2014) (finding, in light of a similar tolling provision to the one at hand here, that the notice portion had been met where plaintiff's attorney had submitted a letter to the insurer within three years of the accident notifying it of plaintiff's "possible underinsured motorist claim", along with supporting documentation).

Here, construing the facts in the light most favorable to Matteson, her attorney did "ha[ve] numerous telephone conversations with [Safeco's] adjuster within the three-year period regarding . . . the fact that there would be an underinsured claim." Aff. of Isabel V. Del Vecchio.  There is no evidence in the record, however, that she provided Safeco with any written notification that specifically mentioned an underinsured claim within that period.[4]  Nor is there any evidence as to what the adjuster – or any other representative from Safeco, for that matter – said to Attorney Del Vecchio during those calls.  In other words, Matteson has "failed to present any evidence as to what the defendants in fact did to mislead [her]" into thinking she had complied with the written notice requirement in the policy.  Voris, 297 Conn. at 602.  Thus, because "[t]he policy plainly require[d] written notice of a claim for underinsured motorist benefits", and Matteson failed to provide such written notice within the relevant timeframe, she did not meet the first requirement to toll the three-year period.  Dorchinsky 90 Conn. App. at 561.

---

[4] Matteson argues that her Attorney's September 16, 2013 letter requesting reimbursement under the medical payments portion of the policy was sufficient to meet this requirement because the claim number on that letter "evidenc[ed] that an underinsured motorist claim was opened."  Pl.'s Mem. at 7. She provides no support in the record for this speculation, however, and moreover the September 16, 2013 letter does not mention underinsured motorist benefits at all.  See Def.'s Ex. C.

Even if she had though, Safeco would still be entitled to summary judgment on its counterclaim because Matteson also failed to meet the second requirement for tolling the three-year period – namely, commencing suit or arbitration within 180 days of exhausting the tortfeasor's liability limits.  In Connecticut, the date of exhaustion is the date of "payment by check . . . as of the moment of delivery of the check, provided that the check is honored upon its presentment."  Scalise v. Am. Emp'rs Ins. Co., 67 Conn. App. 753, 760-61 (2002) (concluding that the date of exhaustion was the date that the attorney had received and deposited the check).  In her Affidavit, Attorney Del Vecchio states that Matteson "was paid out on the tortfeasor claim . . . via check dated July 13, 2018."[5]  Her policy requires her to then "[c]ommenc[e] suit or arbitration proceedings" within 180 days of that date.  Def.'s Ex. B at 20.  However, it was not until January 15, 2019, already six days after the expiration of that 180-day period, that Matteson sent a formal written demand for underinsured motorist compensation, see Def.'s Ex. K, and it was not until April 9, 2019, that Matteson, through counsel, "ask[ed] that th[e] matter mo[v]e toward arbitration."  Def.'s Ex. L.  Following Safeco's eventual denial of her claim on April 24, 2019, see Def.'s Ex. M, Matteson finally brought suit against Safeco on May 22, 2019 in Rhode Island.  Def.'s R. 56(a)1 Stmt at ¶ 19; Pl.'s Mem. at 8.

To be sure, throughout this period, Matteson has brought forth evidence upon which a reasonable juror could conclude that Safeco was being entirely unresponsive to Attorney Del Vecchio's attempts to contact the company and move forward with the

---

[5] Attorney Del Vecchio's Affidavit states only that the check was dated July 13, 2018.  It does not say when the check was received or deposited.  Matteson has pointed to no other evidence in the record demonstrating that the date of receipt of the check was later than July 13.  Accordingly, she has failed to come forth with evidence demonstrating that the date of exhaustion was later than July 13 and, consequently, that her demand for arbitration was within 180 days of that date of exhaustion.

claim.  See, e.g., Aff. of Isabel V. Del Vecchio at ¶ 8 (stating that the January 15, 2019 demand letter was only sent "follow[ing] several unanswered phone calls regarding the claim"); Def.'s Ex. L (email from Attorney Del Vecchio asking that the matter move towards arbitration sent only after she had "attempted to contact [Safeco] several times" and received no response).  Connecticut courts, however, consistently enforce the 180-day time period in the context of underinsured motorist claims.  See, e.g. Orsini v. Kemper Independence Ins. Co., No. NNHCV126031073, 2014 WL 341737, at *5 (Conn. Super. Ct. Jan. 7, 2014) (finding that, where the tortfeasor's liability limits were exhausted on March 15, 2011, and the plaintiff had not filed suit until June 4, 2012, "there [was] no genuine issue of material fact that he failed to commence the suit . . . within the 180-day period mandated in the insurance policy").  Nor is ignorance of the contract terms, absent any evidence in the record showing the insurer misled the insured about the requirement, a defense.  See id. at *6 (rejecting plaintiff's argument that the delay past 180 days should be excused because "at no time during the pendency of this case were the provisions of the policy communicated to him" by holding that there is "no case law or statutory authority to support his argument that the defendant was required to advise him about the time limitations in the policy"); see also Main Street Am. Assurance Co. v. Savalle, No. 3:18-CV-2073, 2022 WL 43866, at *10 n. 10 (D. Conn. Jan. 5, 2022) (noting that, in Connecticut, an insurer is "under no duty to inform [the insured] of his [notification] responsibilities under the policy, or to further inform him of its intentions to rely on the [notification] provision as a defense to coverage") (internal quotations and citations omitted).

Thus, because Matteson has failed to come forth with evidence upon which a reasonable jury could find that she met either of the tolling requirements in her policy by (a) notifying Safeco of her potential underinsured motorist claim in writing within three years following the accident, and (b) commencing suit or arbitration within 180 days of exhausting the tortfeasor's liability limits, the court concludes that, by the plain terms of the contract, she failed to toll the three-year period.[6]  However, because Matteson argues that Safeco has waived its right to assert these timeliness defenses against her claim for uninsured motorist benefits, such a finding does not resolve Safeco's counterclaim.  It is to that argument that the court now turns.

    B.     The Agreement to Dismiss the Rhode Island Action

In her Memorandum, Matteson argues that, in the agreement between the parties that induced her to dismiss her Rhode Island lawsuit and refile it in Connecticut, Safeco "waived its contractual defenses" related to timely filing, i.e., its ability to argue here that Matteson's claim for underinsured motorist benefits is time-barred because she failed to toll the three-year period.  Pl.'s Mem. at 14-18.  She also argues that Safeco is otherwise estopped from raising these defenses.  Id.  In a nutshell, the parties disagree here as to what Safeco agreed to give up in exchange for Matteson dismissing her Rhode Island action and refiling it in Connecticut: Matteson says the insurer agreed to waive "any claims or defenses related to timely filing", including defenses related to her failure to adhere to the policy terms governing when a suit against Safeco must be filed or how that period could be tolled.  Id. at 14 (emphasis in original).  Safeco

---

[6] Curiously, Matteson argues in her Memorandum that "it would be inappropriate to enter judgment at this juncture" on Safeco's counterclaim, and that "[p]roper discovery must be conducted on this issue."  See Pl.'s Mem. at 14.  She has already had ample opportunity to conduct "[p]roper discovery" in this case.

responds by arguing that it was clear throughout the course of negotiations – not to mention in the text of the agreement itself – that it was waiving only its statute of limitations defense, not its defenses grounded in the policy conditions and her obligations therein.  Def.'s Mem. at 11-15.

In support of its position, Safeco relies primarily on the text of the agreement itself.  See Def.'s Ex. P.  That agreement – which Attorney Del Vecchio assented to via email, see Def.'s Ex. R – provides explicit, unambiguous support for Safeco's position. The agreement states, in pertinent part, that:

> Pursuant to the agreement of the parties, [Matteson has] agreed to voluntarily dismiss the [Rhode Island] lawsuit . . . without costs, with prejudice and with all rights of appeal[ ] waived.  In exchange, Safeco agreed to waive the statute of limitations defense for 60 days from the date of this correspondence, or up to December 21, 2019, for [Matteson] to file a lawsuit in the State of Connecticut against Safeco arising out of the subject accident.
>
> Please be advised that this agreement is specifically limited to Safeco's waiver of the statute of limitations defense for sixty (60) days only.  Safeco explicitly reserves the right to assert any and all available defenses pursuant to [Matteson's] failure to comply with the Policy conditions and obligations, including but not limited to, [her] failure to provide Safeco with proper notice of a[n] Underinsured Motorist Claim and failure to request UIM Arbitration within 180 days of exhaustion of the tortfeasor's policy limits.
>
> Further, please be advised that Safeco reserves all rights available to it under the Policy and applicable law with respect to [Matteson's] claims and lawsuit.  Nothing contained herein, nor any further actions by Safeco, its agents, representatives, or attorneys, should be construed as a waiver of any rights or defenses, legal or equitable, whether or not stated herein, which Safeco possesses under the Policy and applicable law nor should Safeco be deemed estopped from asserting any or all coverage defenses that are currently available under the Policy or any defense which may become applicable to this matter.

Def.'s Ex. P at 1-2 (emphasis added).  Matteson, however, points to other evidence in the record that she argues reflect her interpretation of the agreement, an interpretation which contradicts the express terms of the letter agreement Attorney Del Vecchio

21

assented to via email.  In particular, Attorney Del Vecchio averred that in two earlier phone calls with Safeco Counsel, Safeco counsel "agreed to waive [the statute of limitations] defense in exchange for [Matteson] dropping her Rhode Island cause of action."  Aff. of Isabel V. Del Vecchio at ¶ 13.  But later in her Affidavit, she discusses further "telephone conversations with [Safeco counsel]" where Safeco "made it clear that on behalf of the Defense, she was dropping <u>any</u> claims or defenses [it] might have regarding timely notice or timely filing."  <u>Id.</u> at ¶ 15.  She goes on to say that, because she "was concerned that [Safeco] would not defend the claim on [the] statute of limitation[s] but rather on the contract", she later "emailed and called [Safeco counsel]", who "informed [her] that they were not going to file any claims or defenses based on notice or timeliness of filing."  <u>Id.</u> at ¶ 16.

The lack of clarity as to what, precisely, Safeco was agreeing to give up is reflected elsewhere in the record as well.  When Safeco first sent Attorney Del Vecchio the letter laying out the agreement, her initial response was that it "was a bit confusing [to her]."  Def.'s Ex. Q.  This was because she had "th[ought] it was very clear during [the] phone conversation" that, "[i]f [Matteson] withdraw[s] [her] action in RI[,] . . . Safeco is waiving <u>any</u> claims or defenses it may have that [the] case was not filed within the applicable time period."  <u>Id.</u> (emphasis added).  However, Safeco counsel's response was also unclear, as she responded in the affirmative.  "Yes", she began her email, apparently confirming Attorney Del Vecchio's understanding, before going on to say Safeco was "agree[ing] to waive the statute of limitations defense <u>only</u>, specifically reserving all other rights available to Safeco at law and under the policy."  <u>Id.</u> (emphasis added).  When Attorney Del Vecchio responded by saying "[w]aive any claims or

defenses regarding timely filing", Safeco counsel sent the exact same affirmative response ("[y]es") as she had previously, followed by the exact same qualification that Safeco was "agree[ing] to waive the statute of limitations defense only, specifically reserving all other rights available to Safeco at law and under the policy." Id. (emphasis added). It was only then that Attorney Del Vecchio gave her assent to the agreement via email with no modifications. Def.'s Ex. R.

In Connecticut, courts analyze agreements to settle lawsuits under the usual parameters of contract law. See, e.g., Ackerman v. Sobol Family Partnership, LLP, 298 Conn. 495, 532 (2010) ("[a] settlement agreement, or accord, is a contract among the parties"). "In order to form a valid and binding contract . . . there must be a mutual understanding of the terms that are definite and certain between the parties." Slainte Investments Limited Partnership v. Jeffrey, 142 F. Supp. 3d 239, 249 (D. Conn. 2015) (internal quotations and citations omitted). "The existence of a contract is a question of fact to be determined by the trier on the basis of all of the evidence." Id. (internal quotations and citations omitted); see also 111 Whitney Ave., Inc. v. Comm'r of Mental Retardation, 70 Conn. App. 692, 697 (2002) (it is an "established proposition that a question about the existence of a contract is a question that must be decided by the finder of facts"). However, where, as is the case here, the parties do not dispute the existence of a contract, a "court is not permitted" to raise the issue sua sponte. See Yellow Page Consultants, Inc. v. Omni Home Health Services, Inc., 59 Conn. App. 194, 200-01 (2000); see also Compl. at ¶ 27 (alleging that Safeco "contractually waived its right to all contractual defenses under its policy with [Matteson] as a condition of dismissing the Rhode Island action") (emphasis added); Def.'s Mem. at 11 (arguing that

the parties had an enforceable agreement related to the dismissal of the Rhode Island

action, but that Safeco did not agree to waive any policy defenses in that agreement").

Thus, because the parties do not dispute that they entered into a contract to dismiss the

Rhode Island action, the key factual question becomes the terms of that agreement.

See, e.g., Burns v. RBS Securities, Inc., 151 Conn. App. 451, 457 (Conn. App. 2014)

("[a]bsent specific contract language . . . the terms of th[e] contract" are also "questions

of fact") (internal quotations and citations omitted).

      To analyze that issue, the court must first assess whether the written letter

agreement that Matteson assented to through counsel was itself a fully integrated

manifestation of the parties' accord.  See Def.'s Ex. P.  In Connecticut, where there is a

written agreement between two parties, it is "[t]he intent of the parties [that] determines

whether the written agreement was the final repository of any oral agreements."  Conn.

Acoustics, Inc. v. Xhema Const., Inc., 88 Conn. App. 741, 746 (2005).  "If the court

determines that the parties intended the writing to be a[ ] [fully] integrated agreement,"

then the parol evidence rule applies.  Id.  "The parol evidence rule is a rule of

substantive law which provides that [w]hen two parties have made a contract and have

expressed it in a writing to which they have both assented as the complete and accurate

integration of that contract, evidence, whether parol or otherwise, of antecedent

understandings and negotiations will not be admitted for the purpose of varying or

contradicting the writing.  Suburban Sanitation Service, Inc. v. Millstein, 19 Conn. App.

283, 286 (1989).  In other words, if an agreement is fully integrated, then oral

agreements or other evidence extrinsic to the written agreement itself are generally "not

considered when determining the contractual obligations of the parties."  Conn.

Acoustics, Inc., 88 Conn. App. at 746.  "The parol evidence rule does not by itself . . . forbid the presentation of parol evidence, that is, evidence outside the four corners of the contract concerning matters governed by a[ ] [fully] integrated contract, but forbids only the use of such evidence to vary or contradict the terms of such a contract."  Weiss v. Smulders, 313 Conn. 227, 249 (2014) (internal quotations and citations omitted).

The most common method of creating a fully integrated agreement is through a merger clause, as "[a] contract that contains such a clause manifests the parties' intent to prohibit a court from considering extrinsic evidence."  Massey v. Town of Branford, 118 Conn. App. 491, 499 (2009).  However, the mere absence of a merger clause does not necessarily mean that a written contract is not fully integrated.  Id.  "Whether the parties intended to integrate their negotiations in a writing is a question . . . for the court."  Associated Catalog Merchandisers, Inc. v. Chagnon, 210 Conn. 734, 740 (1989) (citing 2 Restatement (Second), Contracts § 210(3), which provides that "[w]hether an agreement is completely or partially integrated is to be determined by the court as a question preliminary to determination of a question of interpretation or to application of the parol evidence rule").  In determining whether a contract is fully integrated, a court must look to "evidence . . . in the conduct and language of the parties and the surrounding circumstances."  Id. at 349.  In other words, "the court must necessarily be guided by the intent of the parties: Did they intend the writing to embody their entire agreement?"  Ferdinand S. Tinio, Comment Note, The Parol Evidence Rule and Admissibility of Extrinsic Evidence to Establish and Clarify Ambiguity in Written Contract, 40 A.L.R. 1384 § 2.

The record suggests that, at least for Attorney Del Vecchio, she did not intend for the written agreement sent by Safeco counsel to constitute the entirety of the agreement between the two parties.  "Where the parties reduce an agreement to a writing which . . .  appears to be a complete agreement, it is taken to be an integrated agreement <u>unless</u> it is established by other evidence that the writing did not constitute a final expression."  2 Restatement (Second), Contracts § 209(3) (emphasis added).  Here, that is the case. Attorney Del Vecchio's first reaction upon seeing the written contract was not to consent; rather, it was to respond to that email and express her "confusi[on]" that its terms were different than what she believed the parties had already agreed to over the phone.[7]  Def.'s Ex. Q.  Nor was there a merger clause in the written agreement.  Thus, construing the facts presented here in the light most favorable to Matteson, the court cannot conclude that "the parties have deliberately put their engagements into writing . . . without any uncertainty as to the object or extent of such engagement" such that "it is conclusively presumed, that the whole engagement of the parties, and the extent and manner of their understanding, was reduced to writing."  <u>EH</u>

---

[7] The fact pattern at hand here is curiously similar to an example provided in the Restatement (Second) of Contracts regarding integration.  That "Illustration" provides:

> A writes to B a letter offer containing four provisions.  B replies by letter that three of the provisions are satisfactory, but makes a counter proposal as to the fourth.  After further discussion of the fourth provision, the parties come to oral agreement on a revision of it, but make no further statements as to the other three terms.  A's letter is a partially integrated agreement with respect to the first three provisions.

2 Restatement (Second), Contracts § 209, Illustration 2.  Here, there were effectively only two terms in the contract – Matteson would dismiss the Rhode Island action in exchange for Safeco waiving certain defense(s) when the action was refiled in Connecticut.  Neither party disputes Matteson's end of the bargain, but Attorney Del Vecchio responded to the letter offer here by stating that she understood Safeco's obligations under the contract to be different than what was stated in the letter.  Whether the parties here "c[a]me to [an] . . . agreement on the revision" of those obligations is a disputed issue of fact, but it is clear from the Restatement Illustration that, at least as it pertains to the contract term in dispute here, the letter is not a fully integrated written instrument.

Investment Co., LLC v. Chappo LLC, 174 Conn. App. 344, 359 (2017) (internal quotations and citations omitted).  Because "the written contract [here] is not completely integrated . . . [t]he parol evidence rule does not apply", and Matteson is permitted to introduce evidence beyond the four corners of the written letter contract to adduce the obligations of the parties.  Id.

The evidence Matteson has brought forth in the record is also sufficient for a reasonable jury to conclude that Safeco agreed to waive all of its notice and timeliness defenses, including those grounded in the policy itself.  To be sure, a jury need not come to this conclusion.  But a reasonable juror could credit Attorney Del Vecchio's Affidavit and find that, over the course of the telephone conversations between the parties, they agreed that Safeco "was dropping any claims or defenses [it] might have regarding timely notice or timely filing."[8]  Aff. of Isabel V. Del Vecchio at ¶ 15 (emphasis added).  That conclusion is buttressed by Attorney Del Vecchio's immediate response to Safeco's letter, where she explicitly noted her confusion and reiterated her belief that "[if] we withdraw our action in RI and file . . . in CT Safeco is waiving any claims or defenses it may have that this case was not filed within the applicable time period."  Def.'s Ex. Q (emphasis added).  A reasonable juror could also conclude that, by responding affirmatively and saying "[y]es" to Attorney Del Vecchio's request to make sure that her understanding of the agreement was "clear", Safeco was agreeing to her

---

[8] Safeco objects to Attorney Del Vecchio's Affidavit throughout its Reply, arguing that it is "self-serving."  See, e.g., Def.'s Reply at 1.  "Of course, simply because a statement is self-serving does not make it inadmissible."  Burns v. Rovella, No. 19-CV-553, 2021 WL 4263372, at *16 (D. Conn. Sept. 20, 2021).  Here, Attorney Del Vecchio was one of the parties on the phone call when the oral agreement was made.  As such, her Affidavit detailing what occurred during that call is admissible and, because Matteson is the non-moving party here, the court most construe the facts in the light most favorable to her.

proposed terms modifying the letter, even in light of its qualifications later in the email. Id.  Again, a jury need not conclude this, and there is certainly ample evidence in the record supporting Safeco's position.[9]  But when a "contract is susceptible to more than one reasonable interpretation, the contract is ambiguous" and resolution of that ambiguity "is a question of fact."[10]  Cruz v. Visual Perceptions, LLC, 311 Conn. 93, 101, 103 (2014) (internal quotations and citations omitted).

For the reasons stated above, the court denies Safeco's Motion for Summary Judgment as to its Counterclaim and Matteson's Count One breach of contract claim.

C.      Promissory Estoppel

In Count Two, Matteson argues that the doctrine of promissory estoppel precludes Safeco from raising the same timeliness arguments discussed above. Because the undisputed facts in the record following discovery preclude this argument as a matter of law, the court grants Safeco's Motion for Summary Judgment as to Count Two.

In the instant case, the parties do not dispute the existence of a contract related to the dismissal of the Rhode Island action.  Although it "is not strictly the law" in

---

[9] For instance, in the email in the record most contemporaneous to the telephone negotiations in question, Attorney Del Vecchio explicitly states that Safeco's interpretation of the agreement in correct. See Def.'s Ex. O (Attorney Del Vecchio stating that, "per [the telephone] conversation, Safeco . . . has agreed to not assert their statute of limitations defense, if the Plaintiff withdraws the Rhode Island filing and files the case [anew] in Connecticut").

[10] The court notes, however, that to the extent that Matteson has argued here and would seek to argue before the jury that an agreement to waive a statute of limitations defense is synonymous with an agreement to waive defenses based on the timeliness provisions of the policy, she is incorrect as a matter of a law.  "[A] condition [in an insurance policy] requiring suit to be brought within" a certain timeframe is distinct from and "does not operate as a statute of limitations."  Monteiro v. Am. Home Assur. Co., 177 Conn. 281, 283 (1979).  Thus, if the jury were to find that the parties had agreed that Safeco would waive its statute of limitations defense only, Matteson would be precluded as a matter of law from arguing that such an agreement also encompassed a waiver of any of Safeco's defenses grounded in the language of the policy.

Connecticut that "[t]he principle of promissory estoppel applies only when there is no enforceable contract between the parties", that is the case here.  <u>Kent Literary Club of Weslyan Univ. at Middletown v. Wesleyan Univ. et al.</u>, 338 Conn. 189, 211 (2021) (internal quotations omitted).  "The existence of a contract does not create an absolute bar to a promissory estoppel claim when that claim addresses aspects of the parties' relationship that are collateral to the subject matter, and does not directly vary or contradict the terms, of the written agreement."  <u>Id.</u>  Stated differently, "[w]hen an enforceable contract exists . . . parties cannot assert a claim for promissory estoppel [on the basis of] alleged promises that contradict the written contract."  <u>Id.</u> at 210 (internal quotations and citations omitted).

Here, the promissory estoppel claim brought by Matteson addresses the same dispute that is central to her claim that Safeco breached the agreement related to the dismissal of the Rhode Island action.  If a jury were to conclude that the terms of that contract reflect Safeco's understanding that it was agreeing to waive its statute of limitations defense only, then Matteson's promissory estoppel claim would fail as a matter of law because the alleged promises that constitute her promissory estoppel claim would contradict the terms of the contract.  In contrast, if the jury were to agree with Matteson that Safeco had agreed to waive any defenses related to timeliness, then her promissory estoppel claim would be duplicative of her breach of contract claim.  <u>See, e.g.</u>, <u>Munson Colonial Builders, Inc. v. Good Hill Mechanical Contractors, Inc. et al.</u>, No. CV 07 5002102S, 2009 WL 4852419, at *4 (Conn. Super. Ct. Nov. 19, 2009) (finding for plaintiff on its breach of contract claim and therefore entering judgment for defendants on plaintiff's promissory estoppel claim based on a promise integral to the

contract because "where a plaintiff has valid action on contract, no cause of action lies against a defendant for promissory estoppel") (internal quotations and citations omitted).

Accordingly, the court grants Safeco's Motion for Summary Judgment as to Matteson's Count Two promissory estoppel claim.

D.    Bad Faith

In Count Three, Matteson alleges bad faith against Safeco.  The exact parameters of her claim are not fully clear, see Compl. at ¶¶ 31-36, but it appears that she has alleged bad faith on Safeco's part related to (1) its initial denial of her claim, and (2) its "trick[ing] [her] [in]to withdraw[ing] her action" in Rhode Island.  Id. at ¶ 33. However, in her Memorandum, Matteson quasi-abandons her bad faith arguments, mentioning Safeco's alleged bad faith only in passing but not putting forth a specific argument as to why summary judgment on this Count is not warranted.  See Pl.'s Mem. at 6, 18, 26.  She also discusses Safeco's alleged bad faith in her Memorandum only in the context of the agreement to dismiss the Rhode Island action, not in the context of the initial denial of coverage.

To the extent that Matteson has brought and maintained an action for a breach of the implied covenant of good faith related to Safeco's actions in denying her initial claim, the court grants summary judgment for Safeco on that claim.  "Under [the] precedent" of the Connecticut Supreme Court, "a bad faith action must allege denial of the receipt of an express benefit under the [insurance] policy."  Capstone Bldg. Corp. v. Am. Motorists Ins. Co., 308 Conn. 760, 794 (2013).  Stated differently, "the underlying covenant of good faith and fair dealing in a contractual relationship 'is not implicated by conduct that does not impair contractual rights.'"  Chorches v. Stewart Title Guar. Co., 48 F. Supp. 3d 151, 157 (D. Conn. 2014) (quoting id. at 795).  Here, the court has already held that,

by virtue of her breach of the policy by failing to toll the three-year period, Matteson is not entitled to coverage for her underinsured motorist claims based solely on the insurance contract itself.  See supra, Section IV.A.  Of course, it has also held that it is an issue for the jury as to whether Safeco later waived its right to raise that defense when it came to an agreement with Matteson to dismiss the Rhode Island action.  See supra, Section IV.B.  Because there is no issue of disputed material fact as to whether Matteson was denied a benefit she was due under the policy based solely on the terms of the policy itself, her claim of bad faith based on Safeco's initial denial of her underinsured benefits fails as a matter of law.

In contrast, her claim of bad faith premised on Safeco's conduct in inducing her to dismiss the Rhode Island action gets over this initial hurdle because it is an issue of disputed material fact as to whether she was denied a benefit of the contract the parties entered into to dismiss that lawsuit.  If a jury concludes that Safeco breached that contract, a reasonable jury could also conclude that Safeco's conduct therein amounted to bad faith.  "Bad faith in general implies both actual or constructive fraud, or a design to mislead or deceive another, or a neglect or refusal to fulfill some duty or some contractual obligation, not prompted by an honest mistake as to one's rights or duties, but by some interested or sinister motive . . . . Bad faith means more than mere negligence; it involves a dishonest purpose."  Capstone, 308 Conn. at 795 (internal quotations and citations omitted).  Here, Matteson has come forward with evidence upon which a reasonable jury could infer such a dishonest purpose on Safeco's part.  Construing the facts in the light most favorable to Matteson, Safeco consistently ignored Attorney Del Vecchio's attempts to contact it and resolve the parties' disputes in good

faith.  See, e.g., Aff. of Isabel V. Del Vecchio at ¶ 9.  It also breached its promise to not

assert any defenses related to timely notice or filing in this lawsuit.  Taking all this

together, along with Safeco's affirmative responses to Attorney Del Vecchio's emails

expressing confusion as to the terms of the agreement, a reasonable jury could

conclude that the totality of Safeco's conduct as it relates to the agreement to dismiss

the Rhode Island action amounted to "a design to mislead or deceive."  Capstone, 308

Conn. at 795 (internal quotations and citations omitted).  To be clear, Matteson has not

pointed to any direct evidence in the record of such an intent, and a jury would very

much not be obligated to construe the facts in the light most favorable to Matteson.

Here, however, the court is required to do just that and, upon the record before it, the

court concludes that a reasonable jury could find that the disagreement over the terms

of the agreement to dismiss the Rhode Island action was "prompted by [something

more than] an honest mistake."  Id. at 795 (internal quotations and citations omitted).

Accordingly, the Motion for Summary Judgment is granted in part and denied in

part as to Matteson's Count Three bad faith claim.  The Motion is granted to the extent

that Matteson has brought and maintained her bad faith claim based on Safeco's

conduct related to the initial denial of her claim.  The Motion is denied, however, as to

her bad faith claim that pertains to Safeco's conduct related to the agreement to dismiss

the Rhode Island action.

      E.    CUTPA

Finally, in Count Four Matteson alleges that Safeco "violated [CUTPA] by

violating the Connecticut Unfair Insurance Practices Act [CUIPA]" in a variety of ways.

Compl. at ¶ 38.  CUIPA itself does not provide a private right of action; instead, "a

plaintiff may assert a private cause of action based on a substantive violation of CUIPA

through CUTPA's enforcement provision."  Tucker v. Am. Int'l Group, Inc., 179 F. Supp. 3d 224, 229 (D. Conn. 2016).  Matteson has done that here.  Moreover, the Connecticut Supreme Court has held that, "[b]ecause CUIPA provides the exclusive and comprehensive source of public policy with respect to general insurance practices . . . unless an insurance related practice violates CUIPA or, arguably, some other statute regulating a specific type of insurance related conduct, it cannot be found to violate any public policy and, therefore, it cannot be found to violate CUTPA."  State v. Acordia, Inc., 310 Conn. 1, 37 (2013).

Here, Matteson argues that Safeco has violated CUIPA by its "repeated delays and improper methods in handling the claim", which "demonstrate a general business practice of Safeco in failing to timely handle and adjudicate Plaintiff's claim.  That combined with the unscrupulous decision to go back on a deal to waive all claims of timely notice and the statute of limitation[s] as a means to induce Plaintiff to refile in Connecticut, all demonstrate a general business practice on Safeco's behalf."  Pl.'s Mem. at 23.  However, because Matteson has failed to come forward with evidence upon which a reasonable jury could conclude that these business practices extended to claims beyond hers, Safeco is entitled to summary judgment here as a matter of law.

In Lees v. Middlesex Ins. Co., 229 Conn. 842 (1992), the Connecticut Supreme Court held that an insurer's "alleged improper conduct in the handling of a single insurance claim, without any evidence of misconduct by the [insurer] in the processing of any other claim, does not rise to the level of a 'general business practice' as required by [CUIPA]."  Lees, 229 Conn. at 849.  In that case, the plaintiff had alleged numerous instances of misconduct on the part of the defendant insurer in settling her claim.  The

court, however, read CUIPA's requirement that "the unfair settlement practices" in question be "committed or performed 'with such frequency as to indicate a general business practice'" as an indication of the legislature's "clear intent to exempt from coverage under CUIPA isolated instances of insurer misconduct. Id. at 847-49 (quoting Conn. Gen. Stat. § 38a–816(6)).  Because the plaintiff's allegation of misconduct in Lees did not extend beyond her own claim, the court determined that she could not prevail as a matter of law on her CUTPA claim premised on a violation of CUIPA. Id. at 849-50.

The same is true here.  In her Complaint, Matteson alleged that Safeco had violated CUIPA and "caused a denial of coverage and financial loss to [her] and numerous other insureds." Compl. at ¶ 38 (emphasis added).  However, following discovery, Matteson has failed to come forward with any evidence upon which a reasonable juror could conclude that the allegedly deceptive business practices Safeco employed in processing her claim extended to the claims of other insureds to the point where they amounted to a general business practice.  Absent such evidence, her CUTPA claim fails as a matter of law.

The Motion for Summary Judgment is therefore granted as to Matteson's Count Four CUTPA claim.

## V.    CONCLUSION

For the reasons stated above, the court grants Safeco's Motion for Summary Judgment as to Matteson's Count Two promissory estoppel claim and her Count Four CUTPA claim.  The Motion for Summary Judgment is denied as to Safeco's counterclaim and Matteson's Count One breach of contract claim.  Finally, the Motion is granted in part and denied in part as to Matteson's Count Three bad faith claim.  The

Motion is granted as to that Count to the extent that Matteson has brought and maintained it based on Safeco's conduct related to the initial denial of her claim.  The Motion is denied, however, as to her bad faith claim that pertains to Safeco's conduct related to the agreement to dismiss the Rhode Island action.

**SO ORDERED.**

Dated at New Haven, Connecticut this 23rd day of March 2022.


/s/ Janet C. Hall
Janet C. Hall
United States District Judge